UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EAST BAY WOMEN'S HEALTH, INC.,
and YVETTE GENTRY, M.D.,

        Plaintiffs,         Civil Case No. 14-11586
                                         Honorable Linda V. Parker

v.

GLOSTREAM, INC.

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTIONS TO DISMISS [ECF No. 15]**

      On March 19, 2014, Yvette Gentry, M.D. and East Bay Women's Health, Inc. (collectively "Plaintiffs"), filed a third amended complaint ("TAC") against gloStream, Inc. ("gloStream" or "Defendant") for damages for the following counts: (1) fraud by deception; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violations of the unfair competition law; (5) breach of express warranty; (6) breach of contract; and (7) breach of implied covenant of good faith and fair dealing. (Third Am. Compl. 1.) This matter is currently before the Court on Defendant's motion to dismiss Counts 1, 4, 5, and 7 of Plaintiffs' TAC, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 30, 2014. (Def.'s Br. 1.) Defendant also requests that Plaintiffs' damages request be stricken as outside the scope of "agreed-upon allowed relief." (*Id.*) On October 8, 2014, the

1

Court held a motion hearing, at which Plaintiffs voluntarily agreed to dismiss Count 7. For reasons set forth below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I. Factual Background

Because this matter is before the Court on a 12(b)(6) motion to dismiss, the Court must generally confine its 12 (b)(6) ruling to the matters contained within the pleadings and accept all well-pleaded allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009) (citing *Gentek Building Products, Inc. v. Sherwin-Williams*, 491 F.3d 320, 330 (6th Cir. 2007)). Plaintiff Yvette Gentry, M.D. ("Dr. Gentry") is a board-certified obstetrician and gynecologist, currently residing in Alameda County, California. (Third Am. Compl. ¶10.) Plaintiff East Bay Women's Health, Inc. ("EBWH") is a California corporation, providing obstetrics and gynecological services to patients residing throughout the San Francisco Bay Area (*Id.* at ¶ 11.) Dr. Gentry is the sole owner of EBWH. (*Id.*) Dr. Gentry, on behalf of EBWH signed a Software Licensing Agreement ("the Agreement") with Defendant for EBWH's use of Defendant's electronic medical records computer system ("EMR"), in or around December 2009. (*Id.* ¶ 14.) Plaintiffs purchased the EMR based upon Defendant's representation that its EMR would manage all of Plaintiffs' various charts, records, bills, and insurance forms in one repository. (*Id.* at 2) Per terms of the contract,

Plaintiffs were appointed a certified partner, EndSight, to implement and support Defendant's product. Plaintiffs had to pay additional fees to EndSight for professional services, as well as annual costs and monthly support. (*Id.* ¶¶ 20, 21.) Plaintiffs assert that Defendant guaranteed that the EMR would streamline Plaintiffs' clinic operations, thereby creating increased revenues by serving more patients. (*Id.* ¶ 18.) However, Plaintiffs assert that in fact, Defendant's EMR was still in "beta" (experimental) testing mode, and instead of relieving paperwork obligations as promised, the system brought havoc to Plaintiffs' medical practice. (*Id.* ¶¶ 40, 41.) Defendant's EMR supplied incorrect diagnostic and procedure codes on automatically-generated insurance billings, randomly deleted treatment notes, and assigned patient charts randomly to the wrong files. (*Id.* ¶¶ 25, 29, 35.) Plaintiffs' clinic operations slowed tremendously as both medical providers and staff "fought an uphill battle to staunch the flow of mistakes and correct the records." (*Id.* at 2.) Plaintiffs allege that the ongoing disruption diverted significant resources from patient care, caused the loss of valuable staff and exposed plaintiffs to potentially crippling liability. (*Id.* at 3.)

Plaintiffs assert that they repeatedly complained to Defendant about these problems, but were only offered empty guarantees that if they spent more money and time in troubleshooting Defendant's EMR, the EMR would work as promised. (*Id.* at 3.) The aforementioned problems continued, and Plaintiffs became

frustrated and hired additional technical support to make the EMR system workable. (*Id.* ¶ 40.) After consulting with additional support, Plaintiffs discovered they had served as testers for the EMR, and that the system would never work as promised by Defendant. (*Id.* ¶ 41.) Plaintiffs promptly demanded a refund of all sums paid to Defendant and EndSight. (*Id.* ¶ 43.) Defendant declined to offer a refund stating that it appeared that Plaintiffs were unwilling or unable to provide the resources necessary to make the EMR system successful. (*Id.* ¶ 44.) Subsequently, Plaintiffs filed this lawsuit. Defendant, in response to Plaintiffs' TAC moved the Court to dismiss counts 1, 4, 5, and 7 of Plaintiffs' TAC, pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike Plaintiffs' requested damages as outside the scope of agreed-upon allowed relief. (ECF. No. 15.)

## II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a 12(b)(6) motion to dismiss, Plaintiffs "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility requires that the complaint plead factual content that allows the court to draw the reasonable inference that the defendants are liable for

4

the misconduct alleged. *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citations and internal quotation marks omitted).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor will the Court entitle "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than

5

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Twombly*, 550 U.S. at 555.

Although a court ruling on a Rule 12(b)(6) motion "primarily considers the allegations in the complaint," matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be considered. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). The court also may consider documents incorporated by or referred to in the pleadings, as well as documents that are central to the plaintiff's allegations even if not explicitly incorporated by reference. *See Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. Applicable Law and Analysis

### 1. Count 1- Fraud by Deception

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under general pleading standards, the facts alleged in the complaint need not be detailed, although "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988)). Rule 8 requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id.* When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleadings, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct. *Id.*

In complying with Rule 9(b), a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at 503–04 (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)). In the case at hand, Plaintiffs comply with these requirements. Plaintiffs assert that in or around December 2009, when Dr. Gentry signed the contract, Defendant intentionally failed to disclose to Dr. Gentry and EBWH that its EMR was in beta testing mode, that it had never been adequately

7

tested with any health care provider, and that Defendant falsely represented to EBWH and Dr. Gentry that its EMR was the right size and scope for Plaintiffs' medical practice; that Defendant's EMR would increase Plaintiffs' profitability; that its EMR was in substantial conformity with documentation as stated in the contract; that the lab interface was fully operational; and that Defendant's EMR was in compliance with Medicare's meaningful use criteria. (*See generally* Third Am. Compl. ¶¶14–45.) In the paragraphs preceding Count 1, which Plaintiffs reincorporate into Count 1, Plaintiffs discuss in great detail the losses suffered as a result of Defendant's misrepresentations. Plaintiffs explain that they made repeated good faith efforts to resolve the problems with the EMR, only to learn from technical support (which Plaintiffs purchased independently) that they had in fact served as beta testers for Defendant's EMR and that Defendant's EMR would never work as promised. (*Id.* ¶¶ 38–40.) Thus, it is apparent that the time, place, content, scheme, intent, and injury requirements have been fulfilled by Plaintiffs. Accordingly, Defendant's motion to dismiss as to Count 1 is **DENIED**.

Plaintiffs requested that leave to amend their complaint as to Count 1 be granted if the Court found that more facts were needed for their fraud claim. (Pls.' Resp. Br. 10.) The Court finds that Plaintiffs state their fraud violation with particularity, as required by Federal Rule of Civil Procedure 9(b); thus, Plaintiffs do not need to amend their complaint as to Count 1.

8

## 2. Count 4 – Breach of Business and Professions Code § 17200, et. seq

Defendant asserts that Count 4 of Plaintiffs' TAC, for violation of Breach of Business and Professions Code § 17200, et seq., California's unfair competition law, must be dismissed for failure to state a claim under Michigan law, which governs the Agreement. (Def.'s Mot. at 11.) The Court agrees.

In or around December 2009, Plaintiffs and Defendant entered into a contract for use of Defendant's EMR. (Third Am. Compl. ¶ 14.). Within the contract is a provision stating:

> This Agreement will be governed, construed and enforced in accordance with the laws of the United States of America and the State of Michigan, *without regard to its principles of the conflict of laws.* Any and all litigation arising from or relating to this Agreement will be filed and prosecuted before any court of competent subject matter jurisdiction in the State of Michigan, The parties hereto consent to the jurisdiction of such courts over them, stipulate to the convenience, efficiency and fairness of proceeding in such courts, and covenant not to allege or assert the inconvenience, inefficiency or unfairness of proceeding in such courts.

(Agreement § 15.2.) (emphasis added).

The parties dispute whether the instant action is governed by Michigan law or California law. To resolve this dispute, a federal court whose jurisdiction is based on diversity of citizenship must apply the conflict of law rules of the forum state. *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738 (6th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Because the case at

9

hand is before the federal district court in Michigan, we must look to Michigan's conflict of law rules to determine whether Michigan law or California law governs this dispute. Michigan has adopted the approach set forth in the Restatement (Second) of Conflict of Laws. *Id.* (citing *Banek Inc. v. Yogurt Ventures, U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir.1993)). According to this approach, a contractual choice of law provision will be binding unless either:

> (a) [t]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of §188, would be the state of the applicable law *in the absence of* an effective choice of law by the parties.

*Id.* (*referencing* Restatement (Second) of Conflict of Laws § 187(2) (1988)) (emphasis added).  Plaintiff is essentially asserting its argument under § 187(2)(b). Therefore, the Court must determine if: (1) applying the choice of law clause would violate a fundamental policy of Michigan; and (2) Michigan has a materially greater interest than California in the determination of the issue. *See id.*

### (a) Violation of a Fundamental Policy

In the instant action, the contract states that "[t]his Agreement will be governed, construed and enforced in accordance with the laws of the United States of America and the State of Michigan, without regard to its principles of the

conflict of laws." (Agreement § 15.2) Choice-of-law clauses are generally enforceable in Michigan. *Offerdahl v. Silverstein*, 569 N.W.2d 834, 835–36 (Mich. Ct. App. 1997) (recognizing the enforceability of choice-of-law and forum-selection clauses). In general, parties may agree that all causes of action pertaining to a particular matter may be subject to the law of a particular jurisdiction. *Id.* (citing *Hardy v. Monsanto Enviro-Chem Systems, Inc.*, 323 N.W.2d 270 (Mich. 1982); *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 502 N.W.2d 715 (Mich. Ct. App. 1993)). Because in Michigan, choice-of-law clauses are generally enforceable, and parties are able to agree to have all causes of action pertaining to a particular matter be subject to the law of a particular jurisdiction, it is apparent to the Court that the choice-of-law provision in the contract at hand is not a violation of a fundamental policy.

### (b) Materially Greater Interest

Plaintiff asserts that California has a "materially greater interest in the lawsuit" because Dr. Gentry, EBWH, and their patients all reside in California, and California has a "fundamental public policy of not only protecting its small businesses from harm, but in protecting the public health." (Pls.' Resp. Br. 14.) A state does have a public interest in protecting the public health. However, this is not a case in which the state is bringing a lawsuit to protect its citizens; rather, Plaintiffs are bringing this lawsuit seeking reimbursement of monies paid to

11

Defendant for use of its EMR. Having read the TAC, it is apparent that the action is not brought on behalf of the patients. Further, the Court believes that Michigan has a significant relationship to the matter at hand, given that Defendant is a Michigan corporation, its business is located in Michigan, performance of the computer services occurs in Michigan, and Michigan has an interest in ensuring that Michigan corporations have certainty in defending their rights in suits all over the country. Having analyzed these interests, the Court believes that Michigan has a greater interest in the matter and that the contract's choice-of-law provision is not in violation of Michigan policy. Accordingly, Michigan law governs. Because Plaintiffs do not bring a cause of action under any Michigan equivalent, Defendant's motion to dismiss as to Count 4 of the TAC is **GRANTED**.

### 3. Count 5 – Breach of Express Warranty

Defendant asserts that Plaintiffs' express warranty claim must be dismissed because the Agreement "expressly limits warranties to those stated" within the contract. (Def.'s Br. 12.) The Agreement in pertinent part states that:

> Other than the warranties expressly stated *in this agreement*, gloStream neither makes nor grants any warranties, representations or conditions, express or implied. GloStream expressly excludes all implied warranties, representations and conditions, including specifically any and all implied warranties, representations of merchantability, merchantable quality, or fitness for any purpose, particular, specific or otherwise.

12

(Agreement § 13.1.) (emphasis added).

Plaintiffs first allege that Defendant breached § 12.1 of the Agreement – an express warranty, expressly guaranteed in the contract. (Third Am. Compl. ¶ 70.) At the motion hearing, Defendant conceded that Plaintiffs' sufficiently pleaded their claim as to Defendant's breach of § 12.1's express warranty. Accordingly, Defendant's Motion to Dismiss as to breach of the express warranty contained in § 12.1 of the Agreement is **DENIED**.

Plaintiffs also allege that Defendant made a series of oral promises that created express warranties outside of the agreement. Specifically, Plaintiffs assert that Defendant warranted that the EMR would comply with the meaningful use criteria; that the EMR was the right size and scope for the medical practice; and that the lab interface was operational. (*Id.* ¶¶ 70–72.) Defendant asserts that any express warranties made *outside* of the agreement were disclaimed per the terms of the contractual agreement between the parties. (Def.'s Br. 12.) In response, Plaintiffs argue that Defendant cannot disclaim express warranties it made *in the contract*. (Pls.' Resp. Br. 20.)

The written contract unambiguously holds in relevant part, that "[o]ther than the warranties expressly stated in this agreement, gloStream neither makes nor grants any warranties, representations, or conditions, express or implied."

(Agreement § 13.1) Having reviewed the contract, the Court finds that nowhere in the agreement is there an express warranty providing for EMR compliance within the meaningful use criteria; nor does the contract promise that the EMR is the right size and scope for the medical practice, or that the lab interface was operational. An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself; however, where a written contract is clear and unambiguous, parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract." *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 284 Mich. App. 617, 634, 774 N.W.2d 332, 341 (Mich. Ct. App. 2009) (citing *Salzman v. Maldaver*, 24 N.W.2d 161, 165 (Mich. 1946)). Thus, because Plaintiffs could not vary the terms of the written contract by extrinsic parol evidence of representations made prior to its execution, Plaintiffs cannot assert a claim for an alleged breach of express warranty arising only by virtue of such representations. *See Salzman*, 24 N.W.2d at 165. Accordingly, Defendant's motion to dismiss as to Plaintiffs' claim of breach of express warranty is **GRANTED** to the extent Plaintiffs' breach of express warranty claim is premised on a series of oral promises that created express warranties outside of the agreement.

For the reasons stated above, Defendant's motion to dismiss Count 5 is **GRANTED** in part and **DENIED** in part.

### 4. Damages Limitations

Defendant asserts that the Agreement limits the type and scope of damages available to Plaintiffs. (Def.'s Br. 13.) Specifically, Defendant asserts that the Agreement expressly limits damages to "replacement of software maintenance or services, or return or credit of any amounts received by gloStream." (*Id.*) In response to Defendant's argument, Plaintiff asserts that "[w]hile parties may limit some damages, Michigan expressly finds that such limitations are inapplicable to claims involving 'willful,' 'wanton,' or 'grossly negligent' behavior: the exact type of outrageous conduct pled in [Plaintiffs'] Complaint." (ECF No. 21 at 20, citing *Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. Ct. App. 2002). In reply to Plaintiffs' response, Defendant asserts that Plaintiffs do not plead gross negligence, or willful or wanton behavior, and therefore the limitations provision should stand. (Def.'s Reply to Motion to Dismiss 7–8.)

A party may not insulate himself against liability for gross negligence or willful and wanton misconduct. *See Lamp v. Reynolds*, 645 N.W.2d 311 (Mich. Ct. App. 2002) (citing) ("Plaintiff's execution of two general releases did not automatically bar his willful and wanton misconduct claim…"). However, Plaintiffs have not asserted in the pleadings an allegation of Defendant's gross negligence, or wanton and willful misconduct. Such claims are independent causes

15

of action, and need to be asserted in the pleadings. *See generally Taylor v. Laban*, 616 N.W.2d 229, 234 (Mich. Ct. App. 2000); *Smith v. Jones*, 632 N.W.2d 509, 514 (2001).

Further, Plaintiffs assert that fraud in the inducement (fraud by deception) is an exception to the rule that a plaintiff's damages are limited to the contract. (Pls.' Resp. Br. 14.) Although Michigan case law holds that fraud in the inducement is an exception to the rule that a plaintiff's remedy is limited to the contract alone, Michigan case law limits the exception. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995). When asserting fraud in the inducement, a plaintiff's allegations of fraud must be extraneous of the contractual dispute. *Id.* Such representations of fraud must be distinguishable from the terms of the contract and warranty that Plaintiffs allege were breached. *Id.*

In determining whether Plaintiffs are able to seek remedy outside of the contract's provision, the Court turns to the Michigan Court of Appeals decision in *Huron Tool & Eng'g Co.* In *Huron Tool & Eng'g Co.*, plaintiff entered into an agreement for the sale of a computer software system. *Id.* at 543. The agreement held that defendant would provide plaintiff with system's design, programming, training and installation services. *Id.* Because of alleged defects in the software system, plaintiff filed suit alleging

16

fraud, among other causes of action. *Id.* The fraudulent representations alleged by plaintiff concerned the quality and characteristics of the software system sold by defendants. *Id.* at 546. The court determined that such representations are indistinguishable from the terms of the contract and warranty. *Id.* Thus, the court held that because plaintiff's allegations of fraud were not extraneous to the contractual dispute, plaintiff was restricted to its contractual remedies. *Id.*

In the case at hand, Plaintiffs have failed to assert any wrongdoings by Defendant that are independent of Defendant's breach of contract and warranty. Similar to the facts of *Huron Tool & Eng'g Co.*, here, the fraudulent representations alleged by Plaintiffs concern the quality and characteristics of the software system sold by Defendant (gloStream's EMR). (Third Am. Compl. ¶¶ 25–41; Agreement § 12.1.) Such representations are not extraneous to the contractual dispute. *Huron Tool & Eng'g Co.*, 532 N.W.2d at 546. Thus, the fraud in the inducement exception does not apply. Accordingly, for reasons previously mentioned, Defendant's request that Plaintiffs' damages request be stricken is **GRANTED**.

Accordingly,

Defendant's Rule 12(b)(6) motion to dismiss is **GRANTED** in part and **DENIED** in part, in that: Defendant's motion is **DENIED** as to Count 1;

**GRANTED** as to Count 4; **DENIED** in part and **GRANTED** in part as to Count 5; and **GRANTED** as to Count 7. Further, Defendant's request to strike Plaintiffs' damages request is **GRANTED** to the extent Plaintiffs seek damages beyond that which is allowed for in the contract.

**SO ORDERED.**

                                       s/ Linda V. Parker
                                       LINDA V. PARKER
                                       U.S. DISTRICT JUDGE

Dated: January 6, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 6, 2015, by electronic and/or U.S. First Class mail.

                                       s/ Richard Loury
                                       Case Manager